IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-11-1-1 |
| | § | CIVIL ACTION NO. H-15-3310 |
| CARLOS MANUEL BORIA, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. §2255 is Movant Carlos Manuel Boria's §2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.515) and Memorandum of Law in Support (Document No. 516),[1] and the United States's Response and Motion for Summary Judgment (Document No.526). After reviewing the parties' submissions, the record of the proceedings before the District Court and on appeal in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the United States's Motion for Summary Judgment (Document No. 526) be GRANTED and that Movant Carlos Manuel Boria's §2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.515) be DENIED.

**I.     Procedural History**

Movant Carlos Manuel Boria ("Boria"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. §2255. This is Boria's

---

[1] Carlos Manuel Boria's § 2255 Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-15-3310 and at Document No. 515 in Criminal Action No. H-11-1. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

first attempt at §2255 relief.

On January 3, 2011, a grand jury in the United States District Court for the Southern District of Texas, Houston Division returned a five-count Indictment. (Document No. 33). Count 1 alleged conspiracy to possess with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(a), 846. Count 2 alleged aiding and abetting attempted possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(a), 846 and 18 U.S.C. § 2. Count 3 alleged conspiracy to commit a violation of 18 U.S.C. § 924(c) in violation of 18 U.S.C. § 924(c)(1)(A), 924(o). Count 4 alleged aiding and abetting a violation of 18 U.S.C. § 924(c) in violation 18 U.S.C. § 924(c)(1)(A), 2. Count 5 alleged possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Named as defendants were Boria (Counts 1-5), Francisco Javier Rodriguez (Counts 1-4), Edwin Rivera-Otero (all Counts), Eric Alberto Lewis (Counts 1-4), Marvin Cesar Carabali-Diaz (Counts 1-4), Miguel Suarez Ramirez (all Counts), and Iris Yamileth Bonilla-Reyes (all Counts). A 13-count Superseding Indictment was returned by the Grand Jury on August 9, 2012. (Document No. 142). The Superseding Indictment charged the same Defendants. Counts 1S-5S were the same as Counts 1-4 in the earlier Indictment. The Superseding Indictment added 8 new counts. Count 6S charged aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Count 7S alleged false claim to United States Citizenship in violation of 18 U.S.C. § 911. Count 8S alleged aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Count 9S alleged false claim to United States Citizenship in volation of 18 U.S.C. § 911. Count 10S alleged aggravated identity theft in volation of 18 U.S.C. § 1028A(a)(1). Count 11S alleged false claim to United States Citizenship in violation of 18 U.S.C. § 911. Count 12S alleged unlawful re-entry into the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). Count 13S charged

unlawful re-entry into the United States in violation of U.S.C. § 1326(a). Boria was charged in Counts 6S and 7S. Edwin Rivera-Otero was charged in Count 8S and 9S. Marvin Cesar Carabali-Diaz was charged in Count 10S, 11S and 13S. Iris Yamileth Bonilla-Reyes was charged in Count 12S.

On September 26, 2012, Boria pleaded guilty to Count 6S and 7S, without a written Plea Agreement. As for the remaining charges, following a six day jury trial, Boria was found guilty of Counts 1S-5S. (Document No. 246).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared to which Boria filed written objections. (Document No.269, 292, 294). Boria also filed a Sentencing Memorandum. (Document No. 298). The PSR assigned Boria a base offense level of 34. Because of his role as an organizer/leader in the offense, Boria's base offense level was adjusted upward four levels pursuant to U.S.S.G. § 2D1.1(b)(1). For Counts 1S-5S, Boria had an adjusted offense level of 38. As for the offenses to which Boria pleaded guilty, his base offense level was 8. Boria had a combined adjusted offense level of 38. With an adjusted offense level of 38, and a criminal history category of IV, Boria had an advisory guideline sentencing range of 324 to 405 months imprisonment. Count 4S carried a mandatory consecutive term of 60 months imprisonment pursuant to 18 U.S.C. § 924(c)(1)(A). Count 6S carried a consecutive term of 24 months imprisonment pursuant to 18 U.S.C. § 1028A(a)(1).

Boria was sentenced on April 12, 2013. (Document No. 303, Transcript of Sentencing Hearing, Document No.362). Boria was sentenced to 405 months imprisonment as to Counts 1S and 2S, 240 months as to Count 3S, 120 months as to Count 5S, and 36 months as to Count 7S, all counts to be served concurrently, followed by 60 months as to Count 4S to run consecutive to all

3

other counts, to be followed by 24 months as to Count 6S, to run consecutive to all other counts, for a total term of 489 months, to be followed by a 5 year term of supervised release as to Counts 1S, 2S, and 4S, three year term as to Counts 3S and 5S, and a one year term as to Counts 6S and 7S, all terms to run concurrently. He was ordered to pay a special assessment of $700. (Transcript of Sentencing, Document No.362, pp.15-18). In imposing sentence, the Court stated:

> Carlos Manuel Boria is before the Court this afternoon after being found guilty by a jury of Counts 1 through 5 of the superseding indictment. And after pleading guilty to Count 6 and 7 of the superseding indictment.
>
> The investigation revealed that Mr. Boria and his co-conspirators met with an undercover DEA agent and conspired to rob at least 30 kilograms of cocaine from the stash house.
>
> Mr. Boria, along with the other co-conspirators, agreed to restrain a victim in the course of the offense. He held [an] organizer, leadership role within the conspiracy, and brought the rest of [the] defendants into the proposed scheme to rob the cocaine.
>
> In addition, Mr. Boria is responsible for possession of a firearm. He was dressed in police clothing at the same time. The investigation revealed that his true identity is Luis German Rodriguez, a 33 year old Colombian national who purchased the identity of a United States citizen who was a native of Puerto Rico. He is married to co-defendant Iris Bonilla Reyes, and the couple has a one-year old son. The defendant has five other children from a previous relationship. He is residing illegally in Houston since 1988, and he has reported that he maintains employment as a self-employed contract painter.
>
> He attempted to impersonate a police officer and was dressed in police clothing at the time of his arrest, and he and his co-conspirators intended to physically restrain their victims with zip ties in the course of events. This egregious conduct was not taken into account in the guideline calculations, and I think they warrant a sentence at the upward end of the guideline range, and that such a sentence at the high end will protect the public and also provide deterrence, and is sufficient and necessary but not greater than necessary to comply with the purposes of statutory sentencing framework found in 18 United States Code Section 3553(a).
>
> Although Mr. Boria will likely be deported after he serves his sentence, I am going to impose a five-year term of supervised release because it will contribute to the — as being— to the recidivism of coming back into the country illegally. (Document

No. 362, p. 13-15).

Judgment was entered on April 19, 2013.[2] (Document No.324). Boria appealed his conviction and sentence to the United States Fifth Circuit Court of Appeals. Boria raised several issues on direct appeal. Boria argued that the court erred in denying his motion to dismiss the indictment due to outrageous conduct by the government in setting up the reverse-sting operation. Boria also argued that the court erred in denying his motion to compel the testimony or disclose the identity of the CI. Boria argued that the Court erred in declining to instruct the jury on the defense of entrapment. Boria further argued that the indictment was constructively amended at trial because the jury instruction's description of the first element of Count 2 omitted the word "attempt" and failed to specify that the controlled substance was cocaine. On or about April 13, 2015, the Fifth Circuit affirmed Boria's conviction and sentence. (Document No. 498, 502 ). Boria did not seek certiorari review with the United States Supreme Court. His conviction became final on July 15, 2015, the date that the 90-day period for requesting a Writ of Certiorari expired. *See Clay v. United States*, 537 U.S. 522, 532 (2003);S.Ct. Rule 13.1. On November 8, 2015, Boria timely filed the instant § 2255 motion. (Document No.515).

## II. Discussion

### A. Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show

---

[2] An Amended Judgment was entered on March 10, 2015, reducing Boria's total term of imprisonment to 411 months. (Document No. 490). The reduction was entered pursuant to 18 U.S.C. § 3582(c)(2) based on a guideline sentencing range that has been subsequently lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. §994(u).

5

that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id.* at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied*, 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When ineffectiveness claims relate to counsel's performance at sentencing, *Strickland's* deficiency prong is met when counsel fails to "research facts and law and raise meritorious arguments based on controlling precedent. *United States v. Fields*, 565 F.3d 290, 296 (5th Cir.), *cert. denied*, 558 U.S. 914 (2009)(citing *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003)). In addition, "'any

amount of [additional] jail time has Sixth Amendment significance.'" *Lafler v. Cooper*, ___U.S.___, 132 S.Ct. 1376, 1386 (2012)(quoting *United States v. Glover*, 531 U.S. 198, 203 (2001)). Counsel is not required to "anticipate changes in law or raise meritless objections." *Fields*, 565 F.3d at 296.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The United States Supreme Court in *Harrington v. Richter*, 526 U.S 86, 131 S.Ct. 770, 778 (2011) discussed *Strickland* in the context of a habeas proceeding involving a state conviction. While *Harrington* did not involve a federal habeas proceeding involving a federal conviction, the Court's discussion of *Strickland* and ineffective assistance of counsel claims is instructive and equally applies to claims brought in a federal habeas proceeding such as those raised herein.

With respect to ineffective assistance of counsel claims, the Court observed that "[t]here are,

[ ] 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting from *Strickland*, 466 U.S. at 689). As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct. at 789. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S.Ct. at 791 (emphasis added). Finally, in considering the prejudice prong of *Strickland*, the likelihood of a different result must be substantial, not just conceivable. *Id.* at 791-792 (Citations omitted). As a result, "'[s]urmounting *Strickland's* high bar is never an easy task.'" (quoting from *Padilla v. Kentucky*, 559 U.S. 356, 371(2010)). In part, because:

> Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Harrington*, 131 S.Ct. at 778 (citations omitted). The *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Boria raises claims of ineffective assistance of counsel. Boria claims that his attorney was

ineffective for: (1) failing to file a motion to dismiss Counts 1S, 2S, 3S, and 4S; (2) failing to secure dismissal of the indictment based on entrapment by federal agents;(3) failing to secure a judgment of acquittal based on insufficient proof of intent; and (4) failing to secure a judgment of acquittal on the charge of possession of a firearm in relation to and in furtherance of a drug trafficking crime. According to Boria, counsel's alleged errors relate to his failure to successfully pursue an entrapment defense. Boria maintains that he was not predisposed to commit the crimes charged. Rather the government "planted the seed" and without the introduction of the Confidential Informant ("CI"), neither Boria nor his co-defendants were actively seeking to rob a drug stash house. According to Boria, the actions of the federal agents were "constitutionally deviant" and he was never given the opportunity to show that was not a drug dealer and had never been linked to any conspiracy to distribute narcotics. (Document No. 516, p. 1-2). Upon this record, Boria has failed to show that counsel's performance was unreasonable within the meaning of *Strickland*.

The background facts relevant to Boria's claims were summarized as follows by the Fifth Circuit.

> A. Fictional Cover Story
>
> In 2010, federal agents learned that a group of individuals in the Houston, Texas area, was seeking to rob a narcotics stash house. Based on this intelligence, the agents set up a reverse-sting operation wherein agent Richard Zayas would pose undercover in the role of a disgruntled narcotics courier looking for a group to rob a drug stash house.
>
> Zayas gained his introduction to the defendants and their associates through an unidentified confidential informant ("CI"). After that introductory meeting, Zayas had four other meetings with the group in his undercover role. These meetings, along with more than twenty related phone calls, were recorded.
>
> Agent Zayas's completely fictional cover story was as follows: He is a drug courier who periodically traffics six to seven kilograms of cocaine for a Cuban drug

9

trafficking organization. He retrieves the cocaine from a stash house but is not provided the location of the house until the day of the scheduled pick up. On that day, he is called and given fifteen minutes to arrive at the house. He always sees two individuals at the house: an armed person who stays with him and a second person who retrieves the cocaine from a back room. Zayas never sees money in the stash house. While Zayas waits for his six or more kilograms of cocaine to be retrieved, he sees twenty-five to thirty additional marked kilogram packages of cocaine in the living room. The two stash house workers give Zayas his allotment of cocaine and the delivery instructions, and Zayas leaves.

B. Reverse-Sting Operation

On October 5, 2010, the CI introduced Zayas to defendant Carabali-Diaz, an unidentified man nicknamed Titi, and a third unidentified individual. Following that introduction, Zayas told them his fictional cover story. After providing his cover story, agent Zayas said he was nervous, and Titi responded, "Don't be . . . . This is going to turn out well." Carabali-Diaz asked several questions about the stash house. Zayas told Carabali-Diaz and Titi that the cocaine distributors he dealt with were "serious people" and the robbery would not be easy. Titi responded that Zayas need not worry and that the group would "go in there with everything." Carabali-Diaz noted that the group would have to remove the markings from the cocaine packages before selling them on the street. Carabali-Diaz and Titi discussed how the robbery would take place, and Titi stated that they would tie up the stash house occupants as well as Zayas. Carabali-Diaz said that the plan "look[ed] good." Zayas did not tell Carabali-Diaz and Titi to use firearms or how to conduct the robbery; he only explained who and what was in the house.

Two days later, agent Zayas again met Carabali-Diaz and Titi in his undercover role. The three men discussed the robbery plans. Carabali-Diaz and Titi said that five people would be in the robbery crew and that they would get into the house using police uniforms and vests. Carabali-Diaz said that he had "special people" to do the job and that the group was "prepared." He also discussed the use of firearms and the plan to tie up the stash house workers and occupants, including Zayas, to prevent the victims from realizing that Zayas was part of the robbery team.

Less than three weeks later, agent Zayas participated in another meeting with three unidentified members of the group, including the unidentified individual from the October 5 meeting. Zayas informed the three men that he was scheduled to pick up the cocaine the next night and that he would call them to arrange a meting location just prior to the pickup. Zayas reiterated that one of the stash house guards would be armed and that the robbery would not be "easy at all."

The next day, on October 26, agent Zayas arranged by phone for the group to meet

him before the robbery. All of the defendants except Rodriguez were present for this pre-robbery meeting. Although Lewis was not part of the meeting initially, he had driven to the meeting location and joined the discussion after Zayas asked him if he planned to participate in the robbery. Titi and an individual named Vito were also present. The group waited a while at the meeting location because an additional vehicle with two associates and several items needed for the robbery had not yet arrived.

While they waited for the two associates and robbery gear to arrive, and before Lewis joined the group, agent Zayas told the group that the robbery would be difficult and dangerous, stating "this is not easy," "this is for real man," and "this is no game." Defendant Boria responded that his associates were "experienced," that the group was armed and ready, that they had police uniforms, and that "everything will be done neatly." Titi noted that the members of the group were "serious" and "used to all this" and that they "even ha[d] vests and police uniforms and everything."

After defendant Lewis joined the group, they discussed (1) the amount of cocaine that would be in the house; (2) that Lewis would find the stash house by entering the home's address into his GPS; (3) how they would bring firearms and pretend to be police; (4) that Zayas would have to get on the floor to avoid getting hurt; and (5) the general manner in which the robbery would occur, including rushing in with guns and knocking down and restraining the home's occupants. Agent Zayas did not instruct the defendants how to conduct the robbery but did ask them how they intended to do it.

After these discussions, the group was still waiting for the two other associates and the robbery gear. When the associates did not arrive in a reasonable time, agent Zayas decided to abort the plan to avoid blowing his cover and to ensure that all the perpetrators and firearms would be present for the arrests. Zayas told the group that he could not wait any longer; and defendants Boria, Rivera-Otero, and Carabali-Diaz said that he should go ahead to the stash house and they would execute the robbery the next time he did a pickup. Boria then gave Zayas a phone number at which Zayas could contact him directly. Boria also showed Zayas a tactical carrier vest that said "police." He stated that when Zayas came back, he (Boria) would have the group ready. Rivera-Otero added that the group was "for real." That evening, Boria told his girlfriend, who had been in one of the group's vehicles during the robbery-preparation meeting, that the group was planning to steal drugs from a stash house.

After the October 26 meeting, agent Zayas and defendant Boria spoke several times by phone, with most of the calls initiated by Boria. On October 29, Boria told Zayas that Boria, not Titi, would be the contact person for the robbery, and he asked Zayas to call him around Thanksgiving to tell him when the next pickup would occur. Boria called Zayas again on November 23. Agent Zayas told Boria that his next

pickup from the stash house would be on December 2.

On December 2, the defendants met at Boria's apartment without Zayas and planned the armed robbery. The group discussed how they would enter the house, who would yell "police," and other logistical matters. The defendants had police clothing and at least one firearm. After their planning session, they put on their police clothing and left to meet Zayas.

The group, which included the five defendants, met Zayas in a parking lot. All of the defendants except Lewis, the getaway driver, were wearing police clothing. Agent Zayas aksed Boria if they had firearms. Boria responded affirmatively and showed Zayas a pistol in the passenger door of the vehicle in which Boria had been sitting. The group gathered around and discussed, among other things, the amount of narcotics that would be in the stash house, the stash house setup, and the manner in which the armed robbery would take place. Lewis asked Zayas for the address to enter into his GPS. He also told Zayas not to be nervous and stated that they would take all of the cocaine in the house. Zayas asked if everyone was "all right," and no one responded in the negative or suggested any lack of desire to participate in the robbery.

Zayas pretended to take a phone call providing the location of the stash house and walked away from the group. When agent Zayas was a safe distance away, a law enforcement tactical response team arrested the defendants. Rodriguez dropped a black jacket and police shirt when he attempted to flee. Government agents recovered numerous items of police clothing, several firearms, and many flexible handcuffs (i.e, zip-ties) from the defendants' vehicles.

At no point did Zayas offer the defendants money or provide them guns or police uniforms with which to conduct the robbery. He also did not instruct them on how to execute the robbery. None of the defendants every indicated any hesitation about proceeding. (Document No. 502, pp. 2-7)(footnotes omitted).

As to Boria's claims that his attorney was ineffective for failing to file and pursue a motion to dismiss Counts 1S, 2S, 3S, and 4S, and to secure dismissal of the Indictment, the record shows that the Counts 1S-4S are identical to the Counts 1-4 in the original indictment. Counsel filed a motion to dismiss the original indictment due to outrageous government conduct and entrapment. (Document No. 138). Counsel argued that because the government created a crime where no crime

had previously existed, the indictment should be dismissed. Counsel also moved to have the identity of the informant disclosed. (Document No. 202). The District Court was unpersuaded and denied both motions. (Document No. 140). Boria challenged the denial of the motion to dismiss on direct appeal. The Fifth Circuit was unpersuaded and found no error by the district court erred in denying th motion to dismiss due to outrageous conduct by the government in settling up the reverse-sting operation. The Fifth Circuit wrote:

> The evidence here demonstrates that the defendants were willing and active participants in the armed robbery scheme. They initiated a large number of the phone calls and meetings with agent Zayas; they planned the robbery and touted their experience and readiness; they brought the firearms and police clothing to the pre-robbery meetings and planning sessions; and they did not express reluctance to proceed.
>
> The government violates a defendant's due process rights if it "instigat[es] the criminal activity, provide[s] the place, equipment, supplies and know-how, and run[s] the entire operation with only meager assistance from the defendants." *Tobias*, 662 F.2d at 386. That did not occur here. Agent Zayas did not provide the guns or police clothing; nor did he provide the idea to use such equipment or any instruction as to how to conduct the robbery. To be sure, agent Zayas created the fictional cover story, but he did not "provide the place, equipment, supplies and know-how" or "run the entire operation." *Id.* To the contrary, he displayed nervousness and inexperience, and he told the defendants that the manner in which they conducted the robbery was up to them. Neither does the record show any evidence of coercion.
>
> Accordingly, we find no error in the district court's decision to deny the defendants' motion to dismiss the indictment based on outrageous government conduct. *Accord Posadas Carriles*, 541 F.3d at 361 (finding no outrageous government conduct where the defendant was a willing participant in the criminal conduct); *Tobias*, 662 F.2d at 386-87 (holding that there was no outrageous government conduct where defendant was "predisposed active participant, motivated solely by a desire to make money"); *Gutierrez*, 343 F.3d at 422 (holding that there was no outrageous government conduct where defendant provided more than "meager assistance" during the scheme); *Asibor*, 109 F.3d at 1039-40 (finding no outrageous government conduct where government agents supplied drugs to the defendants and then bought them back with government funds, but the defendants were willing participants); *Yater*, 756 F.2d at 1006 (finding no outrageous government contacts without assistance from the government and transported it himself to the site of the drug sale").

(Document No. 502, p. 11-12)(footnote omitted).

Boria has not shown that counsel's failure to secure dismissal of the indictment based on entrapment fell below that of *Strickland*. Also Boria has not presented evidence sufficient to rebut the presumption that his attorney's decision not to file a second motion to dismiss the Counts 1S-4S was sound trial strategy especially since Boria relies on arguments previously raised and rejected. The law is clear that counsel is not required to engage in the filing of futile motions." *Murray v. Maggie*, 736 F.2d 279, 283 (5th Cir. 1984); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006)(holding that counsel was not deficient in failing to present a merit less argument).

Boria further claims that counsel was ineffective at trial by failing to secure a judgment of acquittal based on insufficient proof of intent. The gist of Boria's argument is that he was denied due process as a result of counsel's failure to successfully pursue an entrapment defense. The Government counters that Boria conflates an entrapment jury instruction with the issue of entrapment and that counsel's defense strategy was to show that Boria was not predisposed to illegally enter a drug stash house and steal contraband. The Magistrate Judge agrees.

Here, the defendants charged in the superceded indictment were targeted based on information they were seeking to rob stash house of cocaine. The targeting of defendants is consistent with legitimate law enforcement activities. "[I]t would undermine law enforcement's ability to investigate and apprehend criminals if its otherwise acceptable conduct became outrageous merely because an individual with no known criminal history whom the government did not suspect of criminal activity joined the criminal enterprise at the last minute at the behest of codefendants." *United States v. Black*, 733 F.3d 294, 308, n. 11 (9th Cir. 2013). Entrapment is "an affirmative defense that requires a defendant to show he was induced to commit a criminal act by a government

agent and that he was not predisposed to commit the act without the inducement." *United States v. Thompson*, 130 F.3d 676, 689 (5th Cir. 1997)(footnote omitted.). Predisposition focuses on "whether the defendant was an 'unwary innocent' or instead an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000)(quoting *United States v. Brace*, 145 F.3d 247, 254 (5th Cir. 1998)). "'Specifically, the question is whether the defendant intended, was predisposed, or was willing to commit the offense before first being approached by government agents." *United States v. Bradfield*, 113 F.3d 515. 522 (5th Cir. 1997)(citing *United States v. Johnson*, 872 F.2d 612, 620-21 (5th Cir. 1989)). In *Bradfield* the Fifth Circuit further instructed: the record must contain "sufficient evidence of both inducement and lack of predisposition," and "the defendant must show evidence that provides, at least, a basis for a reasonable doubt on the ultimate issue of whether criminal intent originated with the government" as opposed to the defendant. *Id.* at 521. Factors the government may rely on to prove predisposition include "[the] desire for profit; demonstrated knowledge and experience with the criminal activity under investigation; the character of the defendant, including post criminal history; whether the government first suggested criminal activity; and the nature of the inducement offered by the government." *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001); *United States v. Theagene*, 565 F.3d 911, 918 (5th Cir. 2009). Entrapment operates through a burden shifting regime. *Theagene,* 565 F.3d at 918. The court will instruct the jury on entrapment only *after* the defendant has made a prima facie showing of government inducement *and* a lack of predisposition on the part of the defendant to engage in the criminal activity. Then the burden shifts to the government to prove beyond a reasonable doubt that the defendant was not entrapped. *United States v. Bradfield*, 113 F.3d 515, 521-22 (5th Cir. 1997).

15

Here, the record shows that counsel attempted to make a prima facie showing of government inducement and lack of predisposition on the part of Boria and argued that the jury be instructed on entrapment. The Court denied the request. The record shows that Boria challenged the Court's denial of an entrapment jury instruction on direct appeal. The Fifth Circuit affirmed the Court's decision not to instruct on entrapment based on the evidence. The Fifth Circuit wrote:

> Viewing the evidence in the defendants' favor, they failed to present a prima facie case of entrapment. With respect to predisposition, the evidence shows that the defendants, save Lewis, were willing and active participants who touted their experience and expertise. For example, the defendants planned the robbery, obtained guns, and procured police clothing. And, they returned to commit the robbery after the initial robbery attempt was scratched when several cohorts failed to arrive on time. The evidence shows that the defendants did not hesitate. To the contrary, the evidence shows that they "promptly availed] [themselves] of the opportunity to carry out an armed robbery once the plot was presented." *Stephens*, 717 F.3d at 445. The defendants' independent behavior, unlinked to agent Zayas, is further evidence of their predisposition to complete the crimes at issue here. *See United States v. Brace*, 145 F.3d 247, 262 (5th Cir. 1998)("[E]vidence of the defendant's ready response to the solicitation, as well as evidence of independently motivated behavior that occurs after government solicitation begins, can be used to prove that the defendant was predisposed, i.e., ready and willing to commit the crime even before he was contacted by the government." (emphasis omitted). Given these facts, no reasonable jury could believe that Boria was not predisposed to commit the crimes at issue. Thus, no reasonable jury could find that he was entrapped, and accordingly, the district court did not err in declining to instruct the jury on an entrapment defense. (Document No. 502, p. 15-16)

The Fifth Circuit opined that Boria failed to make a prima facie showing of inducement because "[t]here is no indication that agent Zayas or any other government agent coerced, harassed, or made repeated overtures to Boria or any of the other defendants." (Document No. 502, p. 16 fn. 11). Boria's arguments albeit raised as an ineffectiveness claim are little more than an attempt to re-litigate the issue of entrapment. The law is well settled "that issues raised and disposed of in a previous appeal from an original judgment and conviction are not considered in § 2255 Motions."

16

*United States v. Kalish*, 780 F.2d 506, 508 n. 12 (5th Cir. 1986). Boria has not shown that counsel's performance at trial fell below that of *Strickland* with respect to grounds one through three.

Boria next alleges that counsel was ineffective for failing to secure a judgment of acquittal on the charge of possession of a firearm in relation to and in furtherance of a drug trafficking crime. Conclusory allegations are insufficient to support a claim of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 285 (5th Cir. 2000)("[C]onclusory allegations of ineffective assistance of counsel do not raise an issue of ineffective assistance in a federal habeas proceedings."). Here, the basis for Boria's § 924(c) conviction was the planned home invasion armed robbery for cocaine. When law enforcement arrested Boria and his co-defendants, five firearms were seized. Upon this record, Boria has not alleged that counsel's failure to secure an acquittal on Count 4S fell below that of *Strickland*.

### III. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the United States's Motion for Summary Judgment (Document No. 526) be GRANTED and that Movant Carlos Manuel Boria's § 2255 motion (Document No.515) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. §636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en

banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 4th day of December, 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE